Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | REBECCA R. PALLMEYER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 0530 | **DATE** | May 17, 2012 |
| **CASE TITLE** | Henry C. Hill (#B-62006) vs. Kenneth L. Osborne, et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's renewed motion for leave to proceed *in forma pauperis* [#7] is granted. The court authorizes and orders the trust fund officer at Plaintiff's place of incarceration to deduct $2.17 from Plaintiff's account for payment to the Clerk of Court as an initial partial filing fee, and to continue making monthly deductions in accordance with this order. The clerk shall send a copy of this order to the trust fund officer at the Pontiac Correctional Center. On the court's own motion, Mark Nelson, Emir Depaz, S.A. Godinez, and Sherry Benton are dismissed as Defendants and Plaintiff's retaliation and due process claims are dismissed on preliminary review pursuant to 28 U.S.C. § 1915A. Plaintiff's claims for injunctive relief are also dismissed as moot. Plaintiff may proceed only on his Eighth Amendment medical claim. The clerk is directed to issue summonses for service on Defendants Osborne, Bautista, and McCallum by the U.S. Marshal. The clerk is further directed to send Plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order.

■ **[For further details see text below.]**    **Docketing to mail notices.**

## STATEMENT

Plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that the Defendants, correctional officials and health care providers at the Sheridan Correctional Center, violated Plaintiff's constitutional rights by retaliating against him for his grievances, by denying him due process in prison disciplinary proceedings, and by acting with deliberate indifference to his serious medical condition (myasthenia gravis).

Plaintiff's motion for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $2.17. The trust fund officer at Plaintiff's place of incarceration is authorized and ordered to collect the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, Plaintiff's trust fund officer is directed to collect monthly payments from Plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States **(CONTINUED)**

mjm

District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and this case number. This payment obligation will follow Plaintiff wherever he may be transferred.

## FACTS

Plaintiff alleges that he suffers from myasthenia gravis, a chronic and debilitating neuromuscular, autoimmune disorder. His required medications, which include Mestinon and Prednisone, are highly regulated, and Mestinon must be taken on a full stomach.

At the time Plaintiff arrived at the Sheridan Correctional Center on April 25, 2011, his condition was manageable because he faithfully took his medications prior to being taken into custody. By June 13, 2011, however, Plaintiff still had not received his medications despite many requests. He began to experience blurred and double vision. When Plaintiff approached Warden Osborne with his concerns, the warden ignored him both times.

By September 2011, Plaintiff's eyes were closed and he was experiencing extreme fatigue. Finally, a correctional officer observed Plaintiff's deteriorating condition and took him to the health care unit. When Defendant McCallum, a staff nurse, saw Plaintiff, she remarked, "Same old problem."

On September 25, 2011, Plaintiff filed an emergency grievance regarding the denial of needed medication. Osborne signed off on the grievance as constituting an emergency matter but then took no further action.

On October 7, 2011, Plaintiff was admitted to the prison infirmary. The attending physician, Defendant Bautista, prescribed a number of different medications and changed Plaintiff's dosage of Mestinon although Bautista is neither a neurologist nor a specialist in the treatment of myasthenia gravis. Bautista continued to meet with Plaintiff four or five times a week over the next several weeks but refused to refer Plaintiff to a neurologist even though Plaintiff's condition did not improve.

During the same time period, Plaintiff experienced a great deal of conflict with Defendant McCallum, a nurse at Sheridan, regarding his care and treatment. McCallum refused to ensure that Plaintiff took his medication on a full stomach or with food as dictated by medical protocol.

On November 3, 2011, Plaintiff and McCallum were arguing, "as always," over his medications. During the course of the argument, Plaintiff called McCallum a "miserable bitch" and commented that she "need[ed] a hug."

After the encounter, McCallum issued Plaintiff a disciplinary report charging him with sexual misconduct. Immediately thereafter, Bautista discharged Plaintiff from the infirmary even though he was still in "myasthenic crisis" at the time (his eyes were both still closed, his blood pressure was dangerously high, and he was experiencing fatigue and weak muscles). Bautista never saw Plaintiff again despite the latter's worsening condition.

At an adjustment committee hearing held on November 3, 2011, Plaintiff asked for a continuance so that he could get documentation out of his property box for his defense. The adjustment committee members **(CONTINUED)**

| STATEMENT (continued) |
|---|

(Defendants Nelson and Depaz) denied Plaintiff's request for a continuance, saying it was "out of [their] hands." The adjustment committee went on to find Plaintiff guilty of the charge, disregarding and misconstruing his defense. The committee imposed a one-year across-the-board penalty. Defendants Godinez and Benton "rubber-stamped" the guilt finding without conducting an independent investigation. On November 8, 2011, Plaintiff filed an emergency grievance with Defendant Osborne; Osborne never responded.

Under 28 U.S.C. § 1915A, the court is required to conduct a prompt threshold review of the complaint. Here, accepting Plaintiff's allegations as true, Plaintiff has articulated a colorable federal cause of action against Defendants Osborne, Bautista, and McCallum for deliberate indifference. Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Estelle*, 429 U.S. at 106; *Greeno*, 414 F.3d at 653. Still, the fact that a prisoner received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action" as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999). Plaintiff's deliberate indifference claim survives initial review.

Plaintiff's claim that he was wrongfully disciplined is dismissed, however, without prejudice to seeking relief by way of habeas corpus. The court cannot, in the context of a civil rights action, determine whether Plaintiff was properly disciplined. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997). Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490. A finding that Plaintiff was wrongfully convicted of sexual misconduct would inescapably amount to a finding that the conviction is invalid. Accordingly, Plaintiff may not challenge the disciplinary proceedings by way of a civil rights action and must instead file a petition for a writ of habeas corpus if he wishes to have good conduct credits restored. *See, e.g., Hanson v. Heckel*, 791 F.2d 93 (7th Cir. 1986) (per curiam); *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). A prisoner claiming that he is entitled to an immediate or more speedy release from his incarceration must file a petition for a writ of habeas corpus if he seeks relief in federal court. *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996). Hearing officers Nelson and Depaz are therefore dismissed as Defendants, as are Godinez and Benton, who approved the conviction.

**(CONTINUED)**

| STATEMENT (continued) |
|---|

Plaintiff's "retaliation" claim is likewise dismissed. Plaintiff specifically admits that he called Defendant McCallum a "miserable bitch." Whether or not his suggestion that she needed a hug constituted sexual misconduct, Plaintiff was not disciplined for exercising constitutionally protected activity. Security concerns allow prison authorities to proscribe language that is foul, vulgar, abusive, threatening, or inappropriate toward other prisoners or employees. *See, e.g., Ustrak v. Fairman*, 781 F.2d 573, 579 (7th Cir. 1986) (There are "few things more inimical to prison discipline than allowing prisoners to abuse guards and each other. The level of violence in American prisons makes it imperative that the authorities take effective steps to prevent provocation."). Similarly, prisons have a legitimate interest in preventing manipulation and harassment of its employees. *Hale v. Scott*, 252 F. Supp. 2d 728, 734 (C.D. Ill. 2003), *aff'd*, 371 F.3d 917 (7th Cir. 2004) (inmate could be disciplined for insolent statements contained in a grievance). Plaintiff has no viable First Amendment claim relating to the prison discipline.

Finally, Plaintiff's claims for injunctive relief have been rendered moot by his transfer to another facility. Plaintiff is currently confined at the Pontiac Correctional Center. If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be "retransferred" and will again be subject to the alleged illegality. *See, e.g., Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (internal citations and quotations omitted); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991). Because Plaintiff does not show a pending case or controversy requiring injunctive relief, that portion of his prayer for relief is vacated as moot.

For the foregoing reasons, Plaintiff may proceed only on his Eighth Amendment medical claim against Defendants Osborne, Bautista, and McCallum. The clerk shall issue summonses forthwith. The United States Marshals Service is appointed to serve Defendants. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve the defendants. With respect to former correctional employees who no longer can be found at the work address provided by Plaintiff, the Illinois Department of Corrections and/or Wexford Health Sources, Inc., shall furnish the Marshal with the Defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. **Plaintiff is once again reminded that he must provide the court with the original plus a complete judge's copy, including any exhibits, of every document filed.** In addition, Plaintiff must send an exact copy of any court filing to Defendants [or to defense counsel, once an attorney has entered an appearance on behalf of Defendants]. Every document filed with the court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to Plaintiff.